### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-07220 MMM (CWx) | Date | November 4, 2013 |
|---|---|---|---|

| Title | *McZeal v. EMC Mortgage Corporation et al.* |
|---|---|

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

| Proceedings: | **Order to Show Cause Why Action Should Not Be Dismissed for Lack of Jurisdiction** |
|---|---|

## I. BACKGROUND

On September 30, 2013, Alfred McZeal filed this *pro se* action against EMC Mortgage Corporation ("EMC"), Jack O'Boyle & Associates ("O'Boyle"),  Mackie Wolf Zientz & Mann, P.C. ("Wolf"), Christopher S. Ferguson, Michael Wayne Zientz, Israel Saucedo, all persons claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint, and various fictitious defendants.[1]  The complaint alleges that McZeal owns or owned real property located at 7307 Crescent Bridge Court, Humble, Texas 77396.  The property is located in Harris County, Texas.[2] McZeal pleads twenty-one causes of action against defendants, specifically (1) quiet title and adverse possession; (2) fraud; (3) violation of the Racketeer Influence Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961; (4) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1961 et seq; (5) violation of the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1601 et seq; (6) violation of equal rights under the law, 42 U.S.C. § 1981;

---

[1]Complaint, Docket No. 1 (Sept. 30, 2013).

[2]*Id*. at 1, ¶ 32.  It is unclear from the complaint whether a foreclosure sale has already occurred.  (Compare *id*., ¶ 24 (alleging that defendants "fraudulently stag[ed] a false foreclosure sale") with *id*., ¶ 161 (requesting the court enjoin defendants from "selling or taking possession of the property").

(7) deprivation of rights under the law, 42 U.S.C. § 1983; (8) conspiracy to interfere with civil rights, 42 U.S.C. § 1985; (9) conspiracy against rights, 18 U.S.C. § 241; (10) breach of the duty of good faith and fair dealing; (11) breach of contract; (12) tortious interference with business contracts; (13) violation of California Deceptive Trade Practices laws; (14) invasion of privacy in violation of the federal and California constitutions; (15) trespass; (16) civil conspiracy; (17) unjust enrichment; (18) negligent misrepresentation; (19) cancellation of fraudulent mortgage, deed, and fake liens; (20) temporary/permanent injunction;[3] and (21) declaratory judgment.[4]  McZeal seeks injunctive relief, in the form of an order "compelling said Defendants . . . to transfer legal title and possession of the subject property to [him]."[5]  He also seeks a declaration that he is the rightful holder of title to the property and that defendants have no title or interest in it.[6]  Finally, he seeks $19,381,000.00 in actual, treble, and punitive damages.[7]  It appears that defendants have not yet been served.[8]

---

[3]Under Local Rule 65-1, McZeal must file a separate application for temporary restraining order ("TRO").  The application must identify the TRO and proposed order to show cause why a preliminary injunction should not issue that McZeal seeks.  CA CD L.R. 65-1.  Only in rare circumstances can a federal court issue a TRO without written or oral notice to the adverse party. FED.R.CIV.PROC. 65(b).  Should McZeal wish to have the court issue a TRO without proof of notice to defendants, his application must satisfy the requirements of Rule 65(b) by setting forth "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and . . . certif[ying] in writing any efforts made to give notice and the reasons why it should not be required." See *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 438-39 (1974) ("The stringent restrictions imposed . . . by Rule 65 on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute"). The court further notes that it is difficult to determine from the contradictory statements in McZeal's complaint whether his property has already been sold, and therefore whether he is likely to suffer irreparable harm in the absence of a TRO.  Any application McZeal submits must therefore show first that the court has jurisdiction to hear the action, and then provide evidence showing that his property has not yet been sold, such that it is appropriate for him to seek an injunction restraining a foreclosure sale.

[4]*Id*. at 1.

[5]*Id*., ¶ 1 (Prayer).

[6]*Id*., ¶ 2 (Prayer).

[7]*Id*., ¶ 175.

[8]Although McZeal asserts that service has been perfected, (*id*., ¶ 17), his complaint also includes a "request for service" that states "[p]lease serve defendants at the following addresses" (*id*. at 56).  McZeal requested a 21-day summons, but has not filed a proof of service and defendants have

## II.  DISCUSSION

McZeal's claims all relate to real property located in Texas.  It therefore appears that the local action doctrine applies to his case.  The local action doctrine is a relic of English common law imported into this country by Chief Justice Marshall while sitting as a circuit judge in *Livingston v. Jefferson*, 15 Fed. Cas. 660 (C.C.D. Va. 1811) (No. 8,411).  Under the doctrine, "[a] local action involving real property can only be brought within the territorial boundaries of the state where the land is located." *Fowler v. Wells Fargo Bank, N.A.*, No. 10–3933–EDL, 2011 WL 175506, *4 (N.D. Cal. Jan. 18, 2011) (quoting *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987)); see also *Justo v. Charter Capital Corp.*, No. 5:11–CV–00670 EJD, 2012 WL 359738, *3 (N.D. Cal. Feb. 2, 2012) ("The local action doctrine requires actions involving real property to be brought in the state where the property is located"); *Diaz–Barba v. Kismet Acquisition, LLC*, No. 08–1446, 2010 WL 2079738, *4 (S.D. Cal. May 20, 2010)  ("The local-action doctrine is a common-law doctrine that prevents federal courts from exercising subject-matter jurisdiction over certain actions involving out-of-state real property. . . .  Local actions are essentially actions in rem and may only be prosecuted 'where the thing on which they are founded is situated,'" quoting *Casey v. Adams*, 102 U.S. 66, 68 (1880)); *Prawato v. PrimeLending*, 720 F.Supp.2d 1149, 1156 (C.D. Cal. 2010) ("[B]ecause the local action doctrine vests exclusive jurisdiction over actions involving land in the forum where the land is located, a federal court not sitting in that forum cannot exercise supplemental jurisdiction over such a claim"); 14D Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE § 3822 (3d ed. 2011) ("[T]his concept . . . is established firmly in federal jurisprudence . . . that local actions can be brought only where the property involved in the action is located").

The local action doctrine prohibits a court from exercising subject matter jurisdiction over a case where it applies.  *Columbia River Packers' Association v. McGowan*, 219 F. 365, 377 (9th Cir. 1914) ("[W]here the suit is strictly local, the subject-matter is specific property, and the relief when granted is such that it must act directly upon the subject-matter, and not upon the person of the defendant[,] the jurisdiction must be exercised in the state where the subject-matter is situated"); see also *United States v. Byrne*, 291 F.3d 1056, 1060 (9th Cir. 2002) ("The federal district courts' jurisdiction over actions concerning real property is generally coterminous with the states' political boundaries"); *Eldee-K Rental Props., LLC v. DIRECTV, Inc.*, No. C 11–02416 CRB, 2011 WL 5600507, *3 n. 6 (N.D. Cal. Nov. 17, 2011) ("Ninth Circuit case law . . . supports the view that the local action doctrine pertains to subject matter jurisdiction," citing *Diaz–Barba*, 2010 WL 2079738 at *4 n. 1 ("The Ninth Circuit . . . has treated the issue as affecting subject-matter jurisdiction"); *Kingsborough v. Sprint Comm. Co.*, 673 F.Supp.2d 24, 35 (D. Mass. 2009) (reviewing the case law, including the Ninth Circuit's decision in *Byrne*, and concluding, "after careful consideration . . . that the doctrine impacts jurisdiction rather than venue")).[9]

---

not yet filed a response to the complaint.

[9]Although at least one federal court has treated the local action doctrine as a venue question, see *Fisher v. Virginia Electric & Power Co.*, 243 F.Supp.2d 538, 557 (E.D. Va. 2003) (concluding

Because the local action doctrine vests exclusive jurisdiction over actions involving real property in the forum where the land is located, a federal court in whose district real property is not located cannot exercise supplemental jurisdiction over such a claim; once a federal court determines the state that has exclusive jurisdiction over a local action, it must dismiss or transfer the action to a court sitting in that state. *Prawoto*, 720 F.Supp.2d at 1156-57 (citing, *inter alia*, *Durfee v. Duke*, 375 U.S. 106, 115 (1963) (noting the Court's "emphatic expressions of the doctrine that courts of one State are completely without jurisdiction directly to affect title to land in other States"); *Voda v. Cordis Corp.*, 476 F.3d 887, 901 (Fed. Cir. 2007) ("[T]he local action doctrine informs us that exercising supplemental jurisdiction in this case appears to violate our own norms of what sovereigns ordinarily expect"); *Gulf Oil Corp.*, 821 F.2d at 287 ("Following *Livingston*, the Supreme Court has consistently recognized that a local action must be brought within the state where the land is located," and this rule "is so fundamental that state courts are not obligated to give full faith and credit to judgments from either federal or state courts sitting outside the local state's territorial boundaries"); *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1522 (D.C. Cir. 1984) (Scalia, J.) ("[T]he local action rule . . . makes the locality's power exclusive and deprives other courts of jurisdiction to settle questions involving real estate"); *Humble Oil & Refining Co. v. Copeland*, 398 F.2d 364, 367 (4th Cir. 1968) ("Texas courts, or federal courts sitting in Texas, have exclusive jurisdiction over actions to determine title to realty within Texas, and neither the decision of the South Carolina Supreme Court nor a decision of the United States District Court for the District of South Carolina would be res judicata in a suit brought in a Texas court"); *Kingsborough*, 673 F.Supp.2d at 35 ("The Supreme Court has repeatedly recognized that exclusive jurisdiction over title to real property is vested in the courts of the state in which the property at issue is located")).

The court applies state law to determine whether the action is local or transitory.[10] See

_____

that the local action doctrine affects venue, not subject matter jurisdiction, but describing the issue as an "unsettled question"), *McGowan* is controlling precedent in the Ninth Circuit, and establishes that the local action doctrine is a question of subject matter jurisdiction. Although the Supreme Court has not specifically considered the distinction, it has used the term "jurisdiction" rather than "venue" when referring to the local action doctrine. See, e.g., *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Association*, 455 U.S. 691, 706 n. 11(1982) (noting the "exclusive jurisdiction each State has to control the administration of real property within its borders"). Thus, although the Jurisdiction and Venue Clarification Act, which became effective on January 6, 2012, amended the venue provisions of 28 U.S.C. § 1391(a)(2) to state that they apply "without regard to whether the action is local or transitory in nature," the classification of an action as local or transitory is still relevant to – and determinative of – a federal court's subject matter jurisdiction inquiry.

[10]The court does not, however, apply state law to determine where venue lies when a local action is joined with a transitory action. See *Prawoto*, 720 F.Supp.2d at 1156. Where a local action is joined with a transitory action, California courts ask two questions: first, is there a local action within the definition of the statute; and second, is there also a transitory action such that venue is

*Prawoto*, 720 F.Supp.2d at 1154-55 (citing *Josevig-Kennecott Copper Co. v. James F. Howarth Co.*, 261 F. 567, 569 (9th Cir. 1919) ("It is admitted that the question whether the action is local or transitory is to be determined by the law of the state")); see also *Eldee-K Rental Props.*, 2011 WL 5600507 at *3 ("[T]he Court will apply California law and rely on § 392 and its related case law to determine whether this action is local").

Under California law, an action is local if it seeks the recovery of real property, an interest therein, or any determination of a right or interest in real property. *Id.* at 1155 (citing CAL.CODECIV.PROC. § 392(a)). McZeal seeks, *inter alia*, cancellation of defendants' mortgage, deed, and lien instruments, an order compelling defendants to transfer legal title and possession of the property to him and enjoining them from selling the property and claiming any right or title in the property in the future, and a declaration that McZeal is the rightful holder of title to the property and that defendants do not have any right or title in or to it.[11]  The subject matter of McZeal's claims therefore pertains to real property and the relief requested, if granted, "is such that it must act directly upon the subject-matter [of the action], and not upon the person of the defendant." *McGowan*, 219 F. at 377.  The action therefore appears to be local. See CAL. CODE CIV. PROC. § 392(a)*;* see also *Justo*, 2012 WL 359738 at *3 ("A plaintiff seeking rescission of her mortgage in order to avoid foreclosure [is] subject to the local action doctrine"); *Fowler*, 2011 WL 175506 at *3 (same); *Prawoto*, 720 F.Supp.2d at 1158 ("Prawoto seeks a combination of money damages and rescission or other termination of a contract granting PrimeLending a security interest in the Texas property, due primarily to a threat that PrimeLending will foreclose on the property.  The main relief sought is the vesting of title to the property in Prawoto free of liens.  Indeed, in the opening paragraphs of Prawoto's complaint, she notes that 'there is a threat of foreclosure on her home.'  Prawoto's action, therefore, is local").  Consequently, it appears that the court lacks subject matter jurisdiction to hear McZeal's claims.

### III. CONCLUSION

The court appears to lack subject matter jurisdiction over McZeal's claims.  Accordingly, the court orders McZeal to show cause on or before **November 15, 2013** why the action should not be dismissed for lack of subject matter jurisdiction or why the court should not transfer his case to a federal court sitting in Harris County, Texas.  Failure to respond by **November 15, 2013** will result in immediate dismissal of the action.

---

proper in more than one forum.  *Id.*  Because the local action doctrine vests exclusive jurisdiction in the state where the real property is situated, federal courts do not ask the second question, because they cannot exercise supplemental jurisdiction over the local claim.  *Id.*; see also *id.* at 1157 ("Federal courts simply do not recognize the form of 'pendent venue' available under California law").  If a federal court determines that another state has exclusive jurisdiction over a local action, it must dismiss or transfer the action to a court sitting in that state.

[11]Complaint, ¶¶ 1-5 (Prayer).